IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEE B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[1] Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 2:19-cv-00013-PMW <br><br> Chief Magistrate Judge Paul M. Warner |

Pursuant to 28 U.S.C. § 636(c), the parties consented to have Chief United States Magistrate Judge Paul M. Warner conduct all proceedings in this case, including trial, entry of final judgment, and all post-judgment proceedings.[2] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Plaintiff Dee B. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see* 42 U.S.C. §§ 1381-1383f. After careful review of the administrative record, the parties' briefs, and the relevant law, the court concludes

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul has been substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this action. *See* ECF no. 20.

[2] *See* ECF no. 13.

that the Commissioner's decision is supported by substantial evidence and, therefore, is AFFIRMED.

## BACKGROUND

Plaintiff alleges disability due to various physical impairments. Plaintiff applied for DIB and SSI on June 24, 2015, alleging disability beginning on August 9, 2013.[3] These claims were denied initially on November 3, 2015, and upon reconsideration on December 31, 2015.[4] Thereafter, Plaintiff filed a written request for a hearing;[5] and Plaintiff appeared and testified at a hearing held on October 11, 2017.[6] On November 3, 2017, the Administrative Law Judge ("ALJ") issued a written decision denying Plaintiff's claims for DIB and SSI.[7] On November 17, 2018, the Appeals Council denied Plaintiff's request for review,[8] making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On January 9, 2019, Plaintiff filed his complaint in this case.[9] On April 11, 2019, the Commissioner filed an answer and a copy of the administrative record.[10] Plaintiff filed his

---

[3] *See* docket no. 10, Administrative Record ("AR at ____") 211-31.

[4] *See* AR at 85-86, 109-10.

[5] *See* AR at 153-54.

[6] *See* AR at 42-84.

[7] *See* AR at 23-41.

[8] *See* AR at 1-9.

[9] *See* ECF no. 3.

[10] *See* ECF nos. 8, 9.

opening brief on May 16, 2019.[11] The Commissioner filed an answer brief on June 20, 2019.[12] Plaintiff filed his reply brief on July 11, 2019.[13]

## **STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v.*

---

[11] *See* ECF no. 17.

[12] *See* ECF no. 19.

[13] *See* ECF no. 21.

*Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step four, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

4

"whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id*.; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

On appeal, Plaintiff contends that the Commissioner's decision should be reversed and remanded because the ALJ: (1) failed to properly evaluate the medical opinion evidence of Dr. Jason Hamula ("Dr. Hamula") and Dr. Richard Knoebel ("Dr. Knoebel"); and (2) failed to include certain impairments in the RFC assessment. For the reasons that follow, the court finds Plaintiff has failed to provide the court grounds on which to overturn the decision of the Commissioner. The court finds that the ALJ applied the correct legal standards and that the ALJ's findings are supported by substantial evidence in the record.

### I.     Medical Opinions

Plaintiff argues that the ALJ erred by giving reduced weight to the opinions of Plaintiff's treating physician, Dr. Hamula and examining physician, Dr. Knoebel. Specifically, Plaintiff asserts that the ALJ committed legal error by failing to "provide reasons supported by substantial evidence to support his rejection of [Dr. Hamula's] opinion"[14] and failing to "cite to evidence

---

[14] ECF no. 17 at 12.

that contradicts Dr. Knoebel's opinions and [failing] to address the probative evidence that supported Dr. Knoebel's opinions."[15]

In evaluating the weight assigned to medical opinions from treating sources, nontreating sources, and nonexamining sources, an ALJ must consider the following factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c):

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations and citation omitted); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ is not required to discuss every factor set forth in the relevant regulations. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review"). As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

---

[15] *Id*. at 13.

In this case, the ALJ properly relied upon the fact that the medical opinions of Dr. Hamula and Dr. Knoebel were inconsistent with the record as a whole with regard to Plaintiff's physical impairments and limitations. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (concluding that the ALJ reasonably discounted a treating source opinion because it was inconsistent with other medical evidence); *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (quotations and citations omitted)). In support of these decisions, the ALJ addressed the statements, treatment notes, and other evidence that he found inconsistent with the record as a whole.

With respect to Dr. Hamula, the ALJ correctly noted Dr. Hamula's statement that Plaintiff was "unable to work" is an opinion on an issue reserved to the Commissioner,[16] and therefore, not entitled to any special significance or weight. *See* 20 C.F.R. § 404.1527(d)(1)-(3) (treating source opinions on issues that are reserved to the Commissioner are never entitled to any special significance). Next, the ALJ noted that Dr. Hamula's treatment notes did not support his opinion that Plaintiff needed to change position every 20 minutes.[17] While Dr. Hamula noted moderate limitations in Plaintiff's ability to stand, nowhere in his treatment notes did he document that Plaintiff was required to change position every 20 minutes.[18] Lastly, the ALJ's determination that "significant limitations" was too vague to be of any assistance to the ALJ in assessing Plaintiff's

---

[16] AR at 32.

[17] *See* AR at 33.

[18] *See* AR at 355, 771.

actual RFC[19] is a legitimate and valid reason to support an assignment of partial weight. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (the statement of a physician that claimant had "severe" limitations in standing, walking, stooping, bending, lifting, carrying, and climbing stairs could be rejected by ALJ as generic and not accurately assessing claimant's true functional capabilities).

With respect to Dr. Knoebel, the ALJ explained that Dr. Knoebel's finding that the Plaintiff "is limited to a 'semi-sedentary' range is inconsistent with the medical evidence discussed above."[20] Dr. Knoebel defined semi-sedentary work as sitting for one-half of the day and standing or walking for one-half of the day with a maximum lifting capacity of 10 pounds or less.[21] The ALJ cites to and discusses evidence inconsistent with this opinion, including that Plaintiff generally retained full strength in his extremities, normal range of motion everywhere (with the exception of his lumbar spine), and no significant swelling in his leg; Plaintiff's own statement that he could perform "deskwork"; records showing that Plaintiff's gait improved over time; and the opinions from Dr. Joseph Fyans and Amber Hodson, PA-C, and from the state agency physicians that Plaintiff remained able to perform light work.[22] Having already set forth this evidence, the ALJ is not required to repetitively recite it again in discounting Dr. Knoebel's opinion. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ

---

[19] AR at 33.

[20] *Id*.

[21] *See* AR at 660.

[22] *See* AR at 30-33; *see, e.g.*, AR at 94-95, 116, 346, 348, 368, 370, 657-58, 756, 771.

set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion."). Moreover, as a non-treating physician, Dr. Knoebel's opinion is not entitled to controlling weight.

Based on the foregoing, the court concludes that the ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Dr. Hamula's and Dr. Knoebel's medical opinions were not fully consistent with the evidence and record as a whole. The ALJ articulated specific and legitimate reasons in his evaluation of the medical opinions of Dr. Hamula and Dr. Knoebel that are closely linked to and supported by substantial medical evidence. *See Raymond*, 621 F.3d at 1272 (stating "an ALJ may decline to give controlling weight to the opinion of a treating physician where he "articulate[s] specific, legitimate reasons for his decision"). Accordingly, the ALJ did not err in evaluating said medical opinions.

As a final matter on this issue, the court notes that many of Plaintiff's arguments on the medical opinion decisions are nothing more than an attempt to reargue the weight of the evidence, which is an unavailing tactic on appeal. It is not this court's role to reweigh the evidence before the ALJ. *See Madrid*, 447 F.3d at 790. Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston,* 851 F.2d at 1247. From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions. *See Oldham,* 509 F.3d at 1257 (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight") (emphasis omitted); *see also Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (quotations and citations omitted) (alteration in original).

## II.  RFC

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's RFC by failing to "properly evaluate the opinion evidence in the record [which] resulted in a [RFC] assessment that does not address all of [Plaintiff]'s established limitations."[23] In general, Plaintiff merely reargues his disagreements with the ALJ's evaluations of the medical source opinions and treatment of certain medical evidence which the court has already addressed above.

Additionally, the court rejects Plaintiff's assertion that the ALJ failed to explain sufficiently his RFC determination and support his decision with substantial evidence. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

Here, the ALJ thoroughly reviewed the medical evidence, which includes, but is not limited to, discussion of medical records and observations, non-medical reports and statements, Plaintiff's own reports regarding his physical ability, and the activities Plaintiff engaged in throughout the relevant time period including effects of any medications and other

---

[23] ECF no. 21 at 4.

nonmedication treatments.[24] Moreover, the ALJ provides extensive discussion of how the evidence supports each conclusion, Plaintiff's ability to perform sustained work activities along with specific limitations, and explains how conflicting evidence was considered and resolved.[25] Accordingly, the court finds the ALJ did not err.

Additionally, the court again notes that many of Plaintiff's arguments on this issue are nothing more than an attempt to reargue the weight of the evidence before the ALJ. As previously stated, that tactic fails on appeal. *See Oldham*, 509 F.3d at 1257; *Lax*, 489 F.3d at 1084; *Madrid*, 447 F.3d at 790; *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.

## **CONCLUSION AND ORDER**

Based on the foregoing, the Commissioner's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 22nd day of May, 2020.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[24] *See* AR at 30-32, 34-35.

[25] *See id*.